IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| APRIL RUMBAUGH, Individually and On Behalf of Others Similarly Situated,<br><br>    Plaintiffs,<br><br><br><br>       vs.<br><br><br><br>USANA HEALTH SCIENCES, INC., DAVID A. WENTZ and PAUL A. JONES, et al.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER<br><br><br><br><br><br><br>Case No. 2:17-CV-106<br>Judge Dee Benson |

The above-captioned case is a federal securities class action lawsuit filed on behalf of all persons, other than defendants, who purchased or acquired USANA securities between March 14, 2014 and February 7, 2017 (the "Class Period"), seeking damages for the alleged violation of federal securities laws. (Dkt. 22, Am. Compl. ¶ 1.) This case is before the court on Defendants' motion to dismiss the Consolidated Amended Class Action Complaint pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), and the Private Securities Litigation Reform Act of 1955, 15 U.S.C. § § 78u-4(a) *et seq.* ("PSLRA").

## BACKGROUND

USANA is a publicly traded Utah company that develops, manufactures and sells nutritional and personal care products worldwide. To distribute and sell its products, USANA has traditionally employed a multi-level marketing business model, relying "on its existing distributors to recruit new distributors by paying the existing distributors a percentage of their recruits' sales." (Dkt. 22, Am. Compl. ¶ 3.) The recruits are known as a distributor's "downline" while the distributor is known as the recruits "upline." (*Id.*) Distributors also make money through direct sales of products to customers.

China has an absolute prohibition on multi-level marketing (i.e., payment to promoters based on the recruitment of other promoters rather than based on sales to customers). Accordingly, companies such as USANA who do business in China are required to modify their business models to focus on direct sales to consumers rather than distributor recruitment. (*Id.* ¶ 4.)

Plaintiff alleges that during the years leading up to the class period in this case, Defendants created a "scheme" of illicit sales in China. According to Plaintiff, part of that scheme involved circumventing Chinese laws banning multi-level marketing by recruiting Chinese nationals and having them register using a fictitious address in Hong Kong. According to Plaintiff, this resulted in an "explosion" of Hong-Kong based revenue between 2009 and 2012. (*Id.* ¶ 7.)

In the midst of those years, in 2010, USANA acquired Baby Care, a People's Republic of China-based manufacturing company that develops and sells nutritional products primarily for

infants.  Plaintiff asserts that BabyCare's direct selling license provided a means for USANA to establish a "behind-the-scenes" presence in China.  (Am. Compl. ¶¶ 9-10.) As a result of acquiring BabyCare, over the next several years, USANA was able to obtain Chinese government approval for "hard to obtain" direct selling licenses in multiple Chinese provinces. (*Id.* ¶¶ 13-14.)

Plaintiff alleges that Hong Kong sales began to decline in direct proportion to the rise in mainland China sales, as sales once attributed to USANA's Hong Kong market "appeared to be reported in BabyCare" in violation of the Foreign Corrupt Practices Act.  (*Id.* ¶ 12.)  Plaintiff also claims that even though USANA had acquired multiple direct selling licenses, USANA nonetheless continued to engage in banned multi-level marketing practices.

After setting forth these historical underpinnings, Plaintiff alleges that during the relevant class period – March 14, 2014 through February 7, 2017 – USANA made numerous false statements and misleading omissions when speaking about its business in China.  Specifically Plaintiff alleges that USANA misled investors by purporting to be in compliance with Chinese regulations prohibiting multi-level marketing, when in actuality USANA was continuing to knowingly engage in the prohibited practice, and that USANA's China sales "exploded" as a result of improperly "redirected Hong Kong sales."  (*Id.* ¶ 15.)

Plaintiff further alleges that in September 2016, during the class period, local police opened an investigation into illegal multi-level marketing by BabyCare/USANA.  Plaintiff claims that the local investigation turned into a "full-blown national investigation," and that in November 2016, USANA received a warning from authorities concerning its compliance with

Chinese law. (*Id.* ¶¶ 16-18.) Plaintiff complains that neither the investigation nor the warning were communicated to USANA investors. (*Id.* ¶ 19.)

Finally, the Amended Complaint alleges that on February 7, 2017, the Class Period ended with USANA's disclosure that "[t]he company is voluntarily conducting an internal investigation of its China operations, BabyCare Ltd. . . . focus[ing] on the compliance with the Foreign Corrupt Practices Act . . . and certain conduct and policies at BabyCare, including BabyCare's expense reimbursement policies." (Am. Compl. ¶ 22.) USANA advised investors that the company had retained outside counsel to conduct the investigation and had notified both the SEC and the U.S. Department of Justice of the investigation. On this news, USANA's share price fell 11.57% to close at $55.40 on February 8, 2017. (*Id.* ¶ 23.)

Based on these allegations, on August 4, 2017, Plaintiff filed the Amended Consolidated Class Action Complaint asserting claims for (1) securities fraud under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and implementing Rule 10b-5; and (2) control person liability against the individual defendants pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t.) Defendants have moved to dismiss, contending that Plaintiff's complaint fails to meet the pleading requirements of Rules 8, 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act, and otherwise fails to state a claim for which relief can be granted.

## LEGAL STANDARDS

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). Under Rule 12(b)(6), the court must accept all well-pleaded allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).

The Court must limit its consideration to the four corners of the Amended Complaint, and any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, constitutes facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In most civil actions, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). However, civil actions alleging securities fraud are subject to a heightened pleading standard. Prior to the enactment of the Private Securities Litigation Reform Act ("PSLRA"), securities fraud actions were analyzed by the pleading standards of Federal Rule of Civil Procedure 9(b), which required that "the circumstances constituting the fraud . . . be stated with particularity," though "[m]alice, intent, knowledge, and other condition of the mind of a person, may be averred generally." Fed.R.Civ.P. 9(b); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 319 (2007).

The PSLRA, which now applies to such actions, requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Allegations of scienter are subject to even more requirements: Plaintiff cannot allege scienter generally, and must state particular facts giving rise to a strong inference of scienter with respect to each act or omission, taking into account plausible, non-culpable alternative explanations for a defendant's conduct along with inferences that favor the plaintiff. *In re Gold Resource Corporation Securities Litig.,* 776 F.3d 1103, 1108-09 (10th Cir. 2015); 15 U.S.C. § 78u-4(b)(2). "Congress left the key term 'strong inference' undefined," but the Supreme Court has held that, "[t]o qualify as 'strong' . . . , an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any

opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314; *see id*. at 324, 328

(stating that the "inference that the defendant acted with scienter need not be irrefutable" but

must be "at least as likely as any plausible opposing inference").

## DISCUSSION

### I.     Puzzle Pleading

The court begins with Defendant's argument that Plaintiff's Amended Complaint is an

impermissible "puzzle pleading" in violation of the Federal Rules of Civil Procedure and the

PSLRA.  (Dkt. 24 at 3.)  As stated in detail above, "Rule 9(b) and the PSLRA subject securities

fraud plaintiffs to exacting pleading requirements.  At the same time, Fed. R. Civ. P. 8 requires

that a complaint be a 'short and plain statement' whose assertions are 'simple, concise, and

direct.'" *Oklahoma Police Pension & Retirement Sys. v. Boulder Brands, Inc.,* Slip Copy, 2017

WL 1148689, *3 (D. Colo. March 28, 2017) (quoting *Arena Land & Inv. Co. v. Petty*, 906

F.Supp. 1470, 1476 & n.5 (D. Utah 1994)).  Defendants argue that Plaintiff's failure to satisfy

these rules should result in dismissal of the Amended Complaint in its entirety.

"In the context of securities class action complaints, courts have repeatedly lamented

plaintiffs' counsels' tendency to place 'the burden on the reader to sort out the statements and

match them with the corresponding adverse facts to solve the "puzzle" of interpreting plaintiffs'

claims.'" *Primo v. Pacivil Biosciences of California, Inc.*, 940 F.Supp.2d 1105, 1111-12 (N.D.

Cal. 2013) (quoting *Wender v. Lumisys, Inc.*, 2 F.Supp.2d 1231, 1244 (N.D. Cal. 1998)); *see

also In re Level 3 Communications, Inc. Securities Litig.*, 667 F.3d 1331, 1339 n.8 (10th Cir.

2012) (Recognizing district court's disapproval of "plaintiff's tendency to 'excerpt[] long

passages including numerous statements and, to a large degree, leave[] the Court to the task of teasing out which specific statements are at issue,'" and stating "[w]e join in this disapproval"). Courts have routinely recognized that "puzzle-style" complaints are not only an improper means of pleading, but also an "unwelcome and wholly unnecessary strain on defendants and the court system." *Primo*, 940 F.Supp.2d at 1112; *see In re Level 3 Communications, Inc. Securities Litig.*, 2010 WL 5129524, *9 (D. Colo. Dec. 10, 2010); *Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer*, 673 F.Supp.2d 718, 733 n.14 (S.D. Ind. 2009) ("Plaintiffs have, to a large degree, employed a 'puzzle pleading' method, which improperly places the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding adverse facts. This method is deficient under the pleading standards.'" (quoting *In re Alcatel Sec. Litig.,* 382 F.Supp.2d 513, 534 (S.D.N.Y 2005))).

The Amended Complaint in this case violates the pleading standards in several respects. As a general matter, the complaint is voluminous, containing 98 substantive pages and 298 paragraphs of allegations, significant portions of which are dedicated to unnecessary summaries, history and boilerplate. Additionally, the complaint's falsity allegations consist largely of lengthy, single-spaced block quotations from a variety of USANA's public statements. It is not until paragraph 144 that Plaintiff sets forth the first paragraph attempting to explain how any statement by USANA was materially false and misleading.

For example, after reciting several block quotes from USANA's 2013, 10-K filings – none of which contain any boldfacing or otherwise highlight any particular sentence or phrase – Plaintiff states generally:

The statements referenced in ¶¶ 137-143 were materially false and misleading because Defendants made false and/or misleading statements as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (I) the Company and/or its BabyCare subsidiary engaged in illegal multi-level marketing practices in China; (ii) the Company failed to keep records that accurately and fairly reflected the Company's transactions and dispositions of assets; (iii) the Company failed to devise and maintain a system of internal accounting controls sufficient to ensure management's control, authority, and responsibility over the firm's assets; (iv) these practices consisted of violations of the FCPA; (v) BabyCare already received at least one official warning of its failure in complying with direct sales practice regulations; (vi) as such, the Company's China revenues were in part the product of an enhanced by unlawful conduct and unlikely to be sustainable; (vii) the foregoing conduct, when it became known, was likely to subject the Company to significant regulatory scrutiny, as well as civil and/or criminal penalties; and (viii) as a result of the foregoing, USANA's public statements were materially false and misleading at all relevant times.

(Am. Compl. ¶ 144.)

Thereafter, and for the next 54 pages, every 2-5 paragraphs, after reciting long quotations from USANA's public statements, Plaintiffs recite this same boilerplate paragraph, asserting:

"The statements referenced in ¶¶ [    ] were materially false and misleading because Defendant made false and/or material misleading statements . . . ."  (*See, e.g., id.* ¶ 147 (referring to ¶¶145-46); ¶151 (referring to ¶¶ 148-50); ¶ 154 (referring to ¶¶ 152-53).)  This boilerplate paragraph of eight (and sometimes nine)[1] reasons why the "statements" were "materially false and

_____

[1]On occasion, there is a slight variation in Plaintiff's boilerplate paragraph of "reasons." For example, in ¶¶ 163, 167, 175, 192 & 234 Plaintiff recites the original boilerplate language but insert an additional allegation as (iii) stating: "(iii) the conduct described in (ii) included, but was not limited to the Company's improper shift of revenue from Hong Kong to mainland China, which accounted for the drop-off in Hong Kong sales."  As a result, such paragraphs contain allegations (i) through (ix) rather than (i) through (viii), in all other respects the boilerplate paragraph remained the same (Boilerplate "Version II").  Similarly, in ¶¶ 258 & 262 Plaintiff recites the original boilerplate language but insert an additional allegation as (vi), stating: "(vi) a nation-wide investigation in China into illegal multi-level marketing practices by BabyCare

misleading" is repeated approximately 34 times.[2]

In response to Defendants' argument that the "complaint fails to specify which particular statements are challenged by Plaintiff," Plaintiff asserts that "the statements at issue are bolded for emphasis and/or specified in the following paragraph." (Dkt. 26, Pl.'s Opp'n at 12.) The court finds this disingenuous, however, given that most of the block quotations do not have any boldfacing, which by Plaintiff's own explanation would indicate there is no false or misleading statement, and yet the quotations are followed by the boilerplate paragraph asserting that the foregoing was false and misleading. As Defendants point out, it seems "unlikely that Plaintiff used boldfacing to specify the allegedly false portions of each quotation, because, in the majority of the quotations, the absence of boldfacing would indicate that *no* portion was alleged to be false." (Dkt. 24, Defs.' Mot. at 4.) Similarly, none of the boilerplate paragraphs containing the "reasons" the statements are allegedly false or misleading contain any specification whatsoever regarding the prior paragraphs.

"These and other defects combine to produce a document that unambiguously violates Rule 8, yet does little to advance the purposes of Rule 9 or the PSLRA. Boilerplate recitations or cumulative quotations do not substitute for clear, precise pleading of key statements and the facts that illustrate how those statements are misleading." *Oklahoma Police Pension & Retirement*

---

and/or USANA had kicked off in October 2016," resulting in allegations (i) through (ix) rather than the original (i) through (viii), in all other respects the boilerplate paragraph remained the same (Boilerplate "Version III").

[2] Am. Compl. ¶¶ 144, 147, 151, 154, 157, 163, 167, 170, 175, 178, 181, 183, 192, 195, 198, 201, 204, 208, 211, 214, 217, 220, 223, 225, 234, 237, 241, 244, 246, 249, 252, 255, 258, 262.

*System v. Boulder Brands, Inc.*, Slip Copy, 2017 WL 1148689, *4 (D. Colo. March 28, 2017)).[3] Like the court in *Oklahoma Pension*, this court is also mindful that Plaintiff's counsel have "touted their experience" in complex securities litigation, and represent that they have the "skill and knowledge" to prosecute this action "effectively and expeditiously." (Dkt. 6, Pl.'s Mot to Appoint Counsel at 11.) "Thus, it should not take heroic efforts by the reader to understand the key factual components of the plaintiff's claims, or to sort the meaningful allegations from pages upon pages of chaff." *Oklahoma Pension,* 2017 WL 1148689 at *4.

Given the foregoing, the court is inclined to dismiss this action in its entirety on that basis alone. However, given the preference for deciding cases on the merits, the court has done its best to sort through the Amended Complaint to determine whether it states a viable claim for relief. For the reasons set forth below, the court finds that it does not.

## II.     Section 10(b) & Rule 10b-5

As stated above, Plaintiff's Consolidated Amended Class Action Complaint alleges violations of § 10(b) of the Securities Exchange Act, Rule 10b-5, and § 20(a) of the Securities Exchange Act. Under Section 10(b) of the Securities Exchange Act of 1934, it is unlawful to "use or employ, in connection with the purchase of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Implementing the Securities Exchange Act,

---

[3]Although the United States Court of Appeals for the Tenth Circuit has declined to specifically address the interplay of Rule 8(a)'s requirement of a "short and plain statement of the claim" with the "heightened pleading standards" of private securities fraud actions, *In re Level 3 Communications, Inc. Securities Litig.*, 667 F.3d 1331, 1339 n.8 (10th Cir. 2012), it has explicitly disapproved of complaints such as the one in this case, that "excerpt long passages and, to a large degree, leave[] the Court to the task of teasing out which statements are at issue." *Id.*

Rule 10b-5 prohibits, *inter alia*, "mak[ing] any untrue statement of material fact." 17 C.F.R. §

240.10b-5. In order to state a private securities fraud claim under Section 10(b), a plaintiff's

complaint must allege that:

> (1) the defendant made an untrue or misleading statement of material fact, or
> failed to state a material fact necessary to make statements not misleading; (2) the
> statement complained of was made in connection with the purchase or sale of
> securities; (3) the defendant acted with scienter, that is, with intent to defraud or
> with recklessness; (4) the plaintiff relief on the misleading statements; and (5) the
> plaintiff suffered damages as a result of his reliance.

*Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003).

Defendants argue that Plaintiff has failed to state a claim for securities fraud because

Plaintiff failed to plead with particularity a material misrepresentation or omission, or failed to

plead particularized facts creating a strong inference of scienter. The court agrees.

A.      **False or Misleading Statements or Omissions**

Plaintiff's theory appears to be that Defendants violated Chinese law prohibiting multi-

level marketing as well as the Foreign Corrupt Practices Act during the class period and that

Defendants' non-disclosure of these alleged violations rendered Defendants' public statements

materially misleading. Plaintiff also suggests that Defendants made misstatements with regard to

the Company's growth in China and the Company's financials.

(1)      **Statements Concerning Interactions with Chinese Regulators
         regarding violations of Chinese Law & the FCPA**

Plaintiff's Amended Complaint suggests that USANA's business model violated Chinese

law during the class period. Specifically, Plaintiff claims that USANA touted its ability to do

business in China while hiding the "negative side of the same coin" concerning USANA's

interactions with Chinese regulators. (Dkt. 26, Pl's Opp'n at 14.) Plaintiff points to an investigation of USANA by Chinese regulators, the Company's receipt of a warning during the class period, and the subsequent payment of a fine. To support Plaintiff's theory that USANA attempted to hide these issues, the Amended Complaint recites numerous statements from various 10-Ks and Fiscal Earnings Conference Calls. However, as explained in detail in the previous section, in lieu of clearly specifying what about these statements is alleged to be false or misleading, "[P]laintiff instead relies on pure volume." *In re Level3 Communic'n, Inc. Sec. Litig.*, 2010 WL 5129524, at *9 (D. Colo. Dec. 10, 2010). To the extent Plaintiff invites an inference that the statements were false because USANA's business model purportedly violated the law, the court finds that such an inference is not supported by the required particularized factual allegations.

Notably, Plaintiff fails to allege any well-pled facts to show that any of these events, including the investigation, reflected a conclusion by Chinese authorities that USANA was engaged in improper multi-level marketing sales, or that Chinese authorities required USANA to change its business practices. At most, Plaintiff alleges that Chinese authorities gave BabyCare a "warning" near the end of the class period. (Am. Compl. ¶ 101.) However, as Defendants point out, a warning does not necessarily rise to the level of a conclusion of wrongdoing. *Richman v. Goldman Sachs Group, Inc.*, 868 F.Supp.2d 261, 272-74 (S.D.N.Y. 2012). Moreover, the allegation of a "warning" in this case does not satisfy the PSLRA's particularity requirement in that it fails to allege the content and consequences of the warning; whether it was formal or informal; which personnel it concerned; which regulator issued the warning; or who at

BabyCare or USANA received it.

USANA disclosed in its public information that it had routine and numerous interactions with Chinese regulators. USANA also warned that some of the interactions were likely to be negative given the "uncertain and evolving" regulatory landscape in China. (Dkt. 24, Exh. B, Excerpts of 2015 10-K at 22, 29-30.). Although Plaintiff asserts that USANA was dealing in "half truths" by not disclosing every detail concerning its interactions with Chinese regulators, not every interaction (whether positive or negative) must be disclosed; issuers are not obligated to "self-flagellat[e]." *Solow v. Citigroup, Inc.*, 2012 WL 1813277, at *4 (S.D.N.Y. May 18, 2012); *see also Richman,* 868 F.Supp.2d at 273-72 ("The law does not impose a duty to disclose uncharged, unadjudicated wrongdoing or mismanagement."). The Amended Complaint in this case is void of facts suggesting that the Chinese investigation was so fundamental to USANA's business that it should have been disclosed. *See Sorkin, LLC v. Fischer Imaging Corp.*, 2005 WL 1459735, *9 (D. Colo. June 21, 2005) (providing that allegations were insufficient and conclusory where whey merely stated "[defendant] did not address violations identified in [government] warning letters").

Similarly, with regard to the Foreign Corrupt Practices Act, Plaintiff never alleges any charge or even a warning by United States authorities, and Plaintiff has failed to state any disclosure obligation. The only allegation purporting to support the claim is USANA's voluntary announcement, on the final day of the class period, that it was conducting an internal investigation concerning compliance with the FCPA. But the mere pendency of an investigation does not mean that actual wrongdoing has occurred.

### (2)    Statements Concerning USANA's Growth in China & Company Financials

The court also finds that Plaintiff fails to adequately allege any misstatement with regard to the Company's growth or financials.  Although the complaint quotes numerous excerpts from the Company's reported financials, the Court is unaware of any specific or well-pled fact that would raise a reasonable inference in support of  Plaintiff's legal conclusion that the Company's "alleged growth was the product of records falsification and illegal conduct." (Dkt. 26, Pl.'s Opp'n at 17.)  The generalized statements by Defendants regarding USANA's growth and future prospects are not sufficiently specific, but rather the sort of  "vague statements of corporate optimism" courts have found not to be actionable under the securities laws.  *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997).

### B.    Scienter

Even assuming *arguendo* that Plaintiff had sufficiently alleged misleading statements of material fact, that is not enough.  Under the heightened pleading standards, Plaintiff must also state with particularity facts "giving rise to a strong inference" that the defendants acted with scienter, defined as "a mental state embracing intent to deceive, manipulate, or defraud or recklessness."  *Adams*, 340 F.3d at 1105 (internal quotation marks omitted).

"In assessing the complaint's allegations regarding scienter, 'the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically.  In sum, "the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?'" *In re Level 3 Communications, Inc. Securities Litig.*, 2010 WL 5129524, *10 (D.

Colo. Dec. 10, 2010) (quoting *Tellabs*, 551 U.S. at 326), *aff'd*, 667 F.3d 1331 (10th Cir. 2012).

In this case, the answer is "no." Having considered the pleadings in their entirety, for the

reasons summarized below and set forth in detail in defendants' motion to dismiss, the court

concludes that the Amended Complaint lacks factual allegations supporting a cogent and

compelling inference of scienter. *See Tellabs*, 551 U.S. at 324 (a complaint suffices "only if a

reasonable person would deem the inference of scienter cogent and at least as compelling as any

opposing inference one could draw from the facts alleged").

     As Defendants point out in the motion to dismiss, with two exceptions, the Amended

Complaint never directly attempts to allege scienter. (Dkt. 24, Defs.' Mot. at 13.) The two

exceptions are Count I, generally asserting violations of Section 10(b) and Rule 10b-5 (Am.

Compl. ¶¶ 301, 303-04, 307), and the background section titled "Confidential Witnesses" (Am.

Comp. ¶¶ 109-136).

     With regard to Plaintiff's allegations in Count I, the court agrees with Defendants'

representation that it is "pure boilerplate" and "could be transplanted wholesale into any

securities complaint against any company." (Dkt. 24, Defs.' Mot. at 13.) Count I recites legal

conclusions, stating generally that defendants acted "knowingly and recklessly" (Am. Compl. ¶

301) and then generally concludes that "by reason of the conduct alleged herein, defendants

knowingly and recklessly" violated section 10(b) and Rule 10b-5 (Am. Compl. ¶ 307). The

court is not aware of any allegations or facts linking any individual defendant to knowledge of

improper practices in China, and mere reliance on the individual defendants' senior positions

within the company is not enough. *See City of Philadelphia v. Fleming Companies, Inc.*, 264

F.3d 1245, 1264 (10th Cir. 2001) ("Generalized imputations of knowledge do not suffice, regardless of defendants' positions within the company."); *see also In re Sprint Corp. Securities Litig.*, 323 F.Supp.2d 1193, 1223-24 (D. Kan. 2002) (explaining that *Fleming* "stands for the proposition that mere allegations that defendants held senior management positions, had access to inside information, and therefore must have known the falsity of certain statements, is insufficient to plead scienter").

Plaintiff's confidential witness ("CW") allegations likewise fail to support an inference of scienter because they fail to provide sufficient detail and knowledge.  For example, CW 1's allegations are broad, based on the experiences of a distributor, and fail to mention any individual defendant.  *See Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1244 (10th Cir. 2016) ("As relatively low level employees, these witnesses could not provide evidence bearing on the executives' mental states.").

Although CW 2 mentions two individual defendants, the complaint does not allege that CW 2 had personal contact with either one, and CW 2 is specifically alleged to have ceased working at USANA prior to the class period.  *See City of Roseville Employees' Retirement System v. Sterling Financial Corp.*, 963 F.Supp.2d 1092, 1135 (E.D. Wash. 2013) (declining to consider accounts of CWs not employed during the class period: "Any inference that pre-class Period practices continued during the Class Period amounts to unsubstantiated speculation").

Similarly, CW 3 ceased working at USANA in 2012, two years prior to the class period, and is not alleged to have had personal knowledge of class period events.  And, although CW 3 allegedly participated in meetings attended by "general managers and senior executives," CW 3

never alleges that any of these meetings were attended by any individual defendant or that any alleged improprieties were discussed.

Finally, CW 4 alleges to have had personal contacts with individual defendant David Wentz.  However, there are no allegations that the contact between Wentz and CW 4 pertained to any of the matters alleged in the complaint.  And, although CW 4 alleges that individual defendants Wentz and Jones had sales reports, including sales in China, "literally at their fingers all the times [sic]" (Am. Compl. ¶ 135), mere "access to internal reports does not establish a strong inference of scienter."  *Sorkin, LLC v. Fischer Imaging, Corp.*, 2005 WL 1459735, *10 (D. Colo. June 21, 2005).  There is no allegation that any individual defendant had knowledge of reports or other information revealing improper conduct in China.  *See In re Zagg Secs. Litig.*, 2014 WL 5089939, *6 (D. Utah Oct. 9, 2014) (finding plaintiffs failed to plead scienter where they lacked allegations of meetings, memoranda, e-mails, or other written documentation" suggesting defendants' knowledge), *aff'd* 797 F.3d 1194 (10th Cir. 2015).

The confidential witness accounts in this case are too far removed – either temporally or proximally – from the defendants.  In the few instances in which a CW alleged some connection to an individual defendant, the CW nonetheless failed to provide a sufficiently particularized account of what the defendants must have known.  *See Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1244 (10th Cir. 2016); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 998 (9th Cir. 2009) ("[G]eneralized claims about corporate knowledge are not sufficient to create a strong inference of scienter, since they fail to establish that the witness reporting them has reliable personal knowledge of the defendants' mental state."); *In re*

*Cabletron Sys., Inc.*, 311 F.3d 11, 31 (1st Cir. 2002) (requiring a corroborating witness to provide a "level of specific detail" about what the defendants must have known to create an inference of scienter). Accordingly, the CW accounts do not contribute to an inference of scienter.

To the extent Plaintiff argues that scienter can be inferred from allegations made at and after the end of the class period, this argument amounts to "fraud by hindsight," which does not constitute securities fraud. *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1247 (10th Cir. 2016). For a statement to be actionable under the securities laws, it must be false when made. Disclosures made after the class period are not sufficient to show that a defendant knew facts during the class period. *In re Level 3 Communications, Inc. Sec. Litig.*, 667 F.3d 1331, 1347 (10th Cir. 2012) (stating that defendants' "hindsight review . . . contributes nothing to an inference of scienter"). Similarly, a company's acknowledgment of a problem does not support an inference of scienter. *See Sorkin,* 2005 WL 1459735, at *8 (D. Colo. June 21, 2005) ("[T]he Company's acknowledgment of past accounting errors is not an admission of a scheme to defraud the investing public."). Nor is an inference of scienter supported by self-remediation, such as an internal investigation. *See*, *e.g., Zagg*, 797 F.3d at 1205 ("[T]he implementation of the [new] policy . . . [is] at most an acknowledgment that the company identified a better way of doing things moving forward, not an indicator that fraudulent intent existed at the time the alleged omission occurred.").

Additionally, the court finds no inference of scienter arising from David Wentz's resignation as co-CEO on November 23, 2016. Although a resignation can, in some circumstances, provide some support for an inference of scienter, unless the plaintiff alleges that

the resignations were "numerous," "uncharacteristic" in relation to the company's "typical hiring and termination patterns" or were accompanied by "suspicious circumstances," an inference of scienter will "never" be as compelling as the inference that the resignation was due to "unrelated personal or business reasons." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009). Aside from Plaintiff's description that Wentz "abruptly" resigned (Am. Comp. ¶ 35), the court is not aware of any such additional allegations. Accordingly, the court finds no inference of scienter arises from the resignation of David Wentz.

In sum, viewing all of the allegations in the Amended Complaint collectively, the court is simply not persuaded that the allegations give rise to a "cogent and compelling" inference of scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).[4]

## III. Section 20(a) – Control Person Liability

"[T]o state a prima facie case of control person liability, the plaintiff must establish (1) a primary violation of the securities laws, and (2) 'control' over the primary violator by the alleged controlling person." *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1270-71 (10th Cir. 2001) (quoting *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998)). Because the Amended Complaint fails to state a claim under Section 10(b) of the Exchange Act for securities fraud against the defendants, Plaintiff's control person liability claim also fails. *Id.* at 1271.

---

[4] Having concluded that Plaintiff has failed to satisfy the "material misstatements or omissions" and "scienter" elements of a securities fraud claim, the court need not address the remaining elements or defendants' remaining arguments.

## **CONCLUSION**

For the foregoing reasons it is ORDERED that defendants' motion to dismiss (Dkt. No.

24) is GRANTED.  Plaintiff's Consolidated Amended Action Complaint is dismissed with

prejudice.

DATED this 16th day of October, 2018.

_____
Dee Benson
United States District Judge